**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Filimon GARCIA–BELTRAN,
Defendant–Appellant.**

No. 03–30162.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 2004.

Filed Nov. 18, 2004.

Nancy Bergeson, Assistant Federal Public Defender, Stephen R. Sady, Portland, OR, for the defendant-appellant.

Frank Noonan, Assistant United States Attorney, Portland, OR, for the plaintiff-appellee.

Before: TROTT, PAEZ, and BERZON, Circuit Judges.

PAEZ, Circuit Judge.

Filimon Garcia–Beltran appeals from a judgment of conviction following a conditional plea of guilty to illegally reentering the United States, in violation of 8 U.S.C. § 1326(a) and (b)(2). Prior to his guilty plea, Garcia–Beltran moved to suppress all evidence gathered as a result of his illegal arrest, including "identity evidence," which he described as fingerprints, statements and photographs. Although Garcia–Beltran sought to suppress all identity evidence, his motion principally focused on the fingerprint exemplars that were taken from him shortly after his arrest. In opposing the motion, the government conceded that the police did not have probable cause to arrest Garcia–Beltran, but argued that evidence of identity did not implicate the Fourth Amendment and therefore was not subject to suppression. The district court agreed and denied the motion. As permitted by his conditional plea agreement, Garcia–Beltran appeals this ruling.

## I.

We hold that the district court erred to the extent it failed to consider the fingerprint evidence separately. We remand for an evidentiary hearing so that the district court may make factual findings regarding the fingerprinting of Garcia–Beltran. As we explain, if on remand the court determines that the fingerprints were taken for an "investigatory" purpose, i.e. to connect Garcia–Beltran to alleged criminal activity, then the fingerprint exemplars should be suppressed. Accordingly, we vacate the judgment and remand for further proceedings.

In light of the government's concession that Garcia–Beltran was arrested without probable cause, the district court did not conduct an evidentiary hearing or make findings of fact regarding the events leading up to his arrest and subsequent detention. From the parties' submissions and arguments before the district court we are able to ascertain the following events that formed the basis for Garcia–Beltran's motion to suppress:

Garcia–Beltran was in the area of Burnside Street in Portland, Oregon on August 14, 2001 getting ready to board the Metro light rail. Officer Hubbard of the Portland Police Department's Central Precinct took Garcia–Beltran into custody. Although he did not recall the circumstances surrounding Garcia–Beltran's arrest, Officer Hubbard told a defense investigator that Garcia–Beltran was most likely arrested in the context of an "INS sweep." He also stated it was possible that he had an INS agent with him on the day he arrested Garcia–Beltran. Garcia–Beltran was turned over to the United States Marshal's Service on the same day he was taken into custody. There is no other evidence in the record that describes the circumstances of Garcia–Beltran's arrest.

Further, the record does not reflect when and which agency obtained Garcia–Beltran's fingerprints.[1] Thus, we are unable to determine the original purpose for fingerprinting Garcia–Beltran, i.e., was it

---

1. At oral argument, the government suggested that Garcia–Beltran may have been finger-printed by the INS. However, the government was not entirely confident in this assertion.

solely to establish Garcia–Beltran's true identity, or was it an attempt to connect Garcia–Beltran to alleged illegal activity? Because the district court considered Garcia–Beltran's fingerprint exemplars as evidence of his identity, without regard to the government's purpose in obtaining them, it did not attempt to resolve these factual issues.[2]

## II.

■ Garcia–Beltran argues that his fingerprints should be suppressed in accordance with the Supreme Court's precedents in *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), and *Hayes v. Florida*, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985), because his fingerprints were taken for criminal investigatory purposes.[3] In *Hayes* and *Davis*, although the defendants were taken into custody without probable cause, the police took their fingerprints to determine whether their fingerprints matched the fingerprints left at the crime scenes. In both cases, there was no doubt about the identity of the suspects who were in custody. And, in both cases, the police fingerprinted the suspects as part of their investigation in attempting to solve serious crimes.

The government responds that it solely seeks to use the fingerprint evidence to establish Garcia–Beltran's identity, and that *Hayes* and *Davis* are therefore inapplicable. Rather, the government argues,

under *INS v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), a defendant's identity cannot be suppressed as the fruit of an illegal arrest, and under *United States v. Guzman–Bruno*, 27 F.3d 420 (9th Cir.1994), and *United States v. Parga–Rosas*, 238 F.3d 1209 (9th Cir.2001), evidence relating to identity is similarly not suppressible.

The government is correct that in *Lopez–Mendoza*, the Court, in rejecting an alien's attempt to suppress his compelled appearance at a deportation hearing, held that "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest even if it is conceded that an unlawful arrest, search or interrogation occurred." 468 U.S. at 1039, 104 S.Ct. 3479. We acknowledged this rule in *Guzman–Bruno* where, in the context of a prosecution under 8 U.S.C. § 1326 involving an illegal arrest, we said that "[a] defendant's identity need not be suppressed merely because it is discovered as the result of an illegal arrest or search." 27 F.3d at 421; *see also United States v. Del Toro Gudino*, 376 F.3d 997, 1001 (9th Cir.2004) ("We continue to hold today that the simple fact of who a defendant is cannot be excluded, regardless of the nature of the violation leading to his identity.").

Garcia–Beltran, however, did not seek to suppress the fact of his identity or "body"; he recognized that he could lawfully be compelled to appear in court. Rather, he

**2.** We review *de novo* the district court's ruling on a motion to suppress evidence. *See United States v. Vargas–Castillo*, 329 F.3d 715, 722 (9th Cir.), *cert. denied*, 540 U.S. 998, 124 S.Ct. 504, 157 L.Ed.2d 401 (2003).

**3.** In his challenge to the district court's ruling, Garcia–Beltran focuses on the fingerprint evidence. He does not separately address his oral statements or the photographs. We note, however, that in response to the motion to

suppress, the government represented that it did not intend to use any statements obtained from Garcia–Beltran at the time he was taken into custody. We further note that with respect to the photographs, Garcia–Beltran's motion expressed some uncertainty whether photographs even existed. We leave it to the district court to determine whether any photographs were taken of Garcia–Beltran, and, if so, whether they should be suppressed in light of our disposition.

sought to exclude all evidence obtained from him as a result of his illegal arrest, including evidence that would tend to establish his true identity, such as fingerprints, photographs and oral statements. Contrary to the government's argument, *Lopez–Mendoza* does not preclude suppression of evidence unlawfully obtained from a suspect that may in a criminal investigation establish the identity of the suspect.

In *Parga–Rosas*, which involved a prosecution under § 1326, we briefly addressed the defendant's argument that the district court should have suppressed his fingerprint exemplars, taken five months after his illegal arrest. In rejecting Parga–Rosas' argument, we stated that fingerprints taken solely for *identification* purposes (*i.e.*, to verify that the person who is fingerprinted is really who he says he is) can be admitted, because evidence of "identity" is never suppressible under *Lopez–Mendoza*. We left open the possibility, however, that fingerprints taken for an "investigatory" purpose should be suppressed. Notably, as the facts of *Parga–Rosas* reveal, the fingerprint exemplars at issue in that case were not tainted by the alleged illegal arrest.

In *Parga–Rosas*, INS agents questioned Parga–Rosas about his alienage and immigration history without advising him of his *Miranda* rights. 238 F.3d at 1211. He was taken to the station where he was read *Miranda* rights and fingerprinted. *Id.* INS computer records revealed that he had been previously deported and had a prior criminal history. He admitted to both. *Id.* The district court suppressed all evidence, including the fingerprint exemplars, except for Parga–Rosas' identity, prior convictions and deportation.

Five months later, after Parga–Rosas was indicted under § 1326, a second set of fingerprints were taken which were matched with a Warrant of Deportation in his INS "A" file. We upheld the admission of the *second* fingerprint exemplars. As we explained: "Because the fingerprints were not taken for investigatory purposes but for the sole purpose of proving Parga–Rosas' identity, the Fourth Amendment is not implicated." *Id.* at 1215 (citing *Guzman–Bruno*, 27 F.3d at 421). The purpose of taking the second set of fingerprints was not to connect Parga–Rosas to a crime with which he was not already connected (*i.e.*, for an investigative purpose); rather, the fingerprints could serve only to further establish his identity. *Parga–Rosas* did not address whether the first set of fingerprints were properly suppressed, and if they were, whether it was on the ground that they were taken for an investigatory purpose.[4] Thus, on remand, if the district court finds that the intent of taking Garcia–Beltran's fingerprints was solely for identification purposes, then this case is controlled by *Parga–Rosas* and Garcia–Beltran's argument must be rejected.

On the other hand, if the district court finds on remand that the intent at the time of taking Garcia–Beltran's fingerprints was solely for investigative purposes, then it is likely that *Hayes* and *Davis* control and the fingerprints must be excluded. In *Davis*, police investigating a rape had only a description of the assailant as an African American youth. Over a period of ten

---

4. Likewise, *Guzman–Bruno* did not directly address the problem of fingerprints taken for an investigative purpose in the context of potential criminal violations of immigration law. As noted, in *Guzman–Bruno*, we rejected the defendant's attempt to suppress his identity as the fruit of an illegal arrest. *Guzman–Bruno*, however, did not involve fingerprint evidence and the need to classify it as either investigatory or identification evidence (and thus *Hayes* and *Davis* were not implicated).

days, the police seized, without warrants, at least 24 African American youths and took them to the police station, where they were questioned, fingerprinted and released. 394 U.S. at 722, 89 S.Ct. 1394. The FBI matched the fingerprints of a fourteen-year old African American employee of the victim to fingerprints on her window and the government sought to introduce the fingerprints at his trial. *Id.* at 723, 89 S.Ct. 1394.

The Court rejected the argument that fingerprint evidence was not subject to the exclusionary rule, holding that the fingerprints were "something of evidentiary value which the public authorities have caused an arrested person to yield to them during illegal detention." *Id.* at 724, 89 S.Ct. 1394. Subsequently, the Court has reaffirmed the principle that the Fourth Amendment does not permit admission of fingerprint evidence resulting from a seizure without reasonable suspicion that the individual has committed a criminal act. *Hayes,* 470 U.S. at 816, 105 S.Ct. 1643.

■ Here, the ultimate question that the district court must answer on the basis of a more complete evidentiary record is: were Garcia–Beltran's fingerprints taken for an investigatory, or identification, purpose (or both)? We recognize that in the investigation of immigration offenses, establishing the identity of the suspect is an essential component of such an investigation. Yet, the need to establish identity does not mean that any evidence that leads to the true identity of the suspect is automatically exempt from the exclusionary rule. We emphasized this point in our recent opinion in *Del Toro Gudino* where we stated, "We continue to hold today that the simple fact of who a defendant is cannot be excluded, regardless of the nature of the violation leading to his identity.

Other evidence, of course, may be suppressed consistent with *Gonzalez–Rivera* [*v. INS,* 22 F.3d 1441 (9th Cir.1994)] and our cases that apply the exclusionary rule in the criminal context." 376 F.3d at 1001.[5] Thus, on remand, if the evidence were to show that as a consequence of the illegal arrest of Garcia–Beltran, law enforcement officials obtained his fingerprints to pursue a criminal immigration law violation, the fingerprints would be subject to suppression unless they were obtained by "means sufficient to have purged the taint of the initial illegality." *United States v. Guevara–Martinez,* 262 F.3d 751, 755 (8th Cir.2001).

Although we do not know the factual circumstances of Garcia–Beltran's arrest and subsequent detention, the government has conceded that there was not probable cause for his arrest. In *Guevara–Martinez,* the defendant sought to suppress his fingerprints that were obtained following his illegal arrest and were used to establish a violation of § 1326. The Eighth Circuit's analysis of the defendant's Fourth Amendment challenge to the fingerprints provides helpful guidance in determining whether fingerprint exemplars obtained following an illegal arrest should be suppressed. As the Eighth Circuit concluded:

[W]e find it significant that the fingerprinting occurred only after the INS had interviewed Guevara–Martinez. The government has offered no evidence that the fingerprints were obtained as a matter of course through routine booking procedures, rather than for the purpose of assisting the INS investigation. The absence of evidence that the fingerprinting resulted from routine booking, and the concomitant inference that an INS-related purpose motivated the finger-

---

**5.** In *Del Toro Gudino* we held: "a defendant's identity obtained as a result of an egregious constitutional violation" may not be suppressed. 376 F.3d at 1001.

printing, also counsel in favor of applying the exclusionary rule.

*Id.* at 756 (citations omitted).

Here, the government has conceded that Garcia–Beltran was taken into custody without any probable cause to believe he committed a criminal offense. However, because the factual record is incomplete we cannot determine whether the district court should have suppressed Garcia–Beltran's fingerprint exemplars. Accordingly, we vacate the order denying Garcia–Beltran's motion to suppress and remand for an evidentiary hearing so that the district court may make appropriate factual findings. If the district court grants the motion, it should permit Garcia–Beltran to withdraw his guilty plea and to proceed accordingly.

**VACATED AND REMANDED.**