WILLIAM A. FLETCHER, Circuit Judge,
dissenting:
I respectfully dissent from Part II.B of the panel’s opinion.
Detective Anderson of the Portland Police Department arrested and detained defendant Ortiz-Hernandez on a drug charge without probable cause. After taking Ortiz-Hernandez to the Multnomah County Justice Center in Portland, Detective Anderson did not pursue the drug charge. Rather, he systematically tried to find out whether Ortiz-Hernandez had violated the immigration laws. First, Detective Anderson ran the false names provided by Ortiz-Hernandez through various data bases without success. Second, Detective Anderson arranged for Ortiz-Hernandez to speak on the telephone with an INS agent. This interview produced no results. Finally, Detective Anderson took exemplars of Ortiz-Hernandez’s fingerprints. Armed with the fingerprints, he finally hit pay dirt. He discovered Ortizr-Hernan-dez’s true name and that he had violated the immigration laws.
We unanimously conclude that Detective Anderson took exemplars of Ortiz-Hernandez’s fingerprints for “investigatory purposes,” in violation of the Fourth Amendment. We therefore hold that the fingerprint exemplars cannot be introduced at trial. So far so good.
But after suppressing the fingerprint exemplars, the panel majority takes an inexplicable turn. The panel majority compels the production of a second set of exemplars. These compelled exemplars (unlike the suppressed exemplars) may be introduced at trial. In other words, the majority allows the government to accomplish with the second fingerprint exemplars precisely the same thing it holds the government cannot accomplish with the first.
In so holding, the majority brushes aside our recent decision in United States v. Garcia-Beltran, 389 F.3d 864 (9th Cir.2004). Majority op. at 14817-18 n. 4. Garcia-Beltran, like Ortiz-Hernandez, was illegally arrested by an officer of the Portland Police Department. His fingerprints, like Ortiz-Hernandez’s, were taken after arrest. Like Ortiz-Hernandez, he was subsequently charged with illegal entry. At Garcia-Beltran’s criminal trial, the district court admitted his “fingerprint exemplars as evidence of his identity.” Id. at 866. We reversed and remanded, holding that the fingerprint exemplars must be suppressed if they were taken for purely investigatory purposes. Our decision in Garcia-Beltran is good law, binding on this panel. The majority decision is flatly inconsistent with it. The majority may not like Garcico-Beltran, but the solution is to go en banc rather than to brush it aside.
I. Established Law
It is established law under Hayes v. Florida, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985), and Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), that fingerprints taken for purely investigatory purposes must be *581 suppressed. It is also established law under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), that not only evidence obtained in violation of the Fourth Amendment, but also evidence “come at by exploitation of the illegality,” must be suppressed. Id. at 488, 83 S.Ct. 407. Under Hayes, Davis, and Wong Sun, this is a very simple case.
We all agree that Detective Anderson took Ortiz-Hernandez’s fingerprint exemplars for an illegal investigatory purpose. We also agree that, because of the Fourth Amendment violation, the fingerprint exemplars must be suppressed.- Further, it is undisputed that the exemplars taken by Detective Anderson led directly to the discovery that Ortiz-Hernandez could be charged with illegal reentry into the United States. Without the Fourth Amendment violation, Ortiz-Hernandez would not be standing trial for illegal reentry and the government would neither need nor want additional fingerprint exemplars.
II. INS v. Lopez-Mendoza
The majority evades the established law of Hayes, Davis, and Wong Sun by its categorical assertion that “identity evidence” can “never” be suppressed. Majority op. at 14816. For that assertion, it relies on a single sentence by the Supreme Court in INS v. Lopez-Mendoza, 468 U.S. 1032, 1039-40, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984):
The “body” or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred. See Gerstein v. Pugh, 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 96 L.Ed. 541 (1952); United States ex rel. Bilokumsky v. Tod, [263 U.S. 149,] 158 [, 44 S.Ct. 54, 68 L.Ed. 221] [ (1923) ].
The majority misreads this sentence and misunderstands Lopez-Mendoza. Far from supporting the majority’s conclusion, Lopez-Mendoza directly conflicts with it.
There were two respondents in Lopez-Mendoza. The quoted sentence is relevant only to the first of them, Lopez-Mendoza. After an illegal arrest, Lopez-Mendoza was placed in deportation proceedings. The immigration judge, relying on a familiar and established rule, held that the illegality of Lopez-Mendoza’s arrest could not be used as a defense in his deportation proceeding. Id. at 1035, 104 S.Ct. 3479. The Supreme Court made quick work of Lopez-Mendoza’s argument to the contrary in the single sentence just quoted, invoking the same rule upon which the immigration judge had relied.
The three cases cited by the Court in support of its sentence all refer to and rely on this same established rule. In Ger-stein, at the page cited in Lopez-Mendoza, the Court wrote, “Nor do we retreat from the established rule that an illegal arrest or detention does not void a subsequent conviction. Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952)[.]” 420 U.S. at 119, 95 S.Ct. 854. In Frisbie, at the cited page, the Court wrote, “This Court has never departed from the rule ... that the power of a court to try a person for a crime is not impaired by the fact that he had been brought within the court’s jurisdiction by reason of a ‘forcible abduction.’ ” 342 U.S. at 522, 72 S.Ct. 509. Finally, in Bilokumsky, at the cited page, the Court wrote, “Irregularities on the part of the Government official prior to, or in connection with, the arrest would not necessarily invalidate later proceedings in all respects conformable to law.” 263 U.S. at 158, 44 S.Ct. 54.
*582 There is no hint in Lopez-Mendoza that the quoted sentence was intended to go beyond the familiar and established rule. There is certainly no hint that the sentence was intended to articulate a categorical new rule, that evidence of the identity of a criminal defendant could always be introduced in court regardless of its source. This was not the issue in Lopez-Mendoza. Nor was it the issue in Ger-stein, Frisbie, and Bilokumsky. The question in those cases was whether a defendant could assert as a defense in a deportation or a criminal case that he had been illegally arrested. The answer, under long-established law, was “no.”
The second respondent in Lopez-Mendoza was Sandoval-Sanchez. His case is directly comparable to the case now before us. Sandoval-Sanchez was arrested in an immigration sweep conducted by the Immigration and Naturalization Service (INS). After his arrest, Sandoval-Sanchez stated his name to INS investigators and admitted that he had re-entered the country illegally. At his civil deportation hearing, he contended that his arrest had been illegal. He therefore challenged the admission of the Form 1-213 on which his name, as well as his illegal re-entry, were recorded. Petition for Writ of Certiorari at 111a, INS v. Lopez-Mendoza, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (No. 83-491). That is, Sandoval-Sanchez did not merely challenge the legality of his arrest. Rather, he challenged the admission of evidence—including evidence of his identity (his name)—obtained as a result of the illegal arrest. The Supreme Court explicitly recognized the difference between his challenge and Lopez-Mendoza’s. It wrote, “Respondent Sandoval-Sanchez has a more substantial claim. He objected not to his compelled presence at a deportation, but to evidence offered at that proceeding.” 468 U.S. at 1040, 104 S.Ct. 3479.
The Court held that the challenged evidence, including evidence of Sandoval-Sanchez’s identity, was admissible. But the Court held that it was admissible only because Sandoval-Sanchez was appearing in a civil deportation hearing. In a lengthy discussion, the Court described the ways in which a civil deportation proceeding is different from a criminal trial. Based on these differences, it concluded that the Fourth Amendment exclusionary rule does not apply in a deportation proceeding: “In these circumstances, we are persuaded that the ... balance between costs and benefits comes out against applying the exclusionary rule in civil deportation proceedings held by the INS.” Id. at 1050, 104 S.Ct. 3479.
However, the Court was explicit in saying that the evidence contained in Sandoval-Sanchez’s Form 1-213 would have been properly suppressed if it had been a criminal proceeding. Citing Wong Sun, the Court wrote, “The general rule in a criminal proceeding is that statements and other evidence obtained as a result of an unlawful, warrantless arrest are suppressible if the link between the evidence and the unlawful conduct is not too attenuated.” Id. at 1040-41, 104 S.Ct. 3479. If the proceeding is criminal, the exclusionary rule requires the suppression of identity evidence obtained as a result of the Fourth Amendment violation. But if the proceeding is a civil deportation hearing, the evidence is admissible. As the Court wrote, “When the crime in question involves unlawful presence in this country, the criminal may go free, but he should not go free within our borders.” Id. at 1047, 104 S.Ct. 3479 (emphasis added).
The conclusion reached by the majority in this case is thus not supported by Lopez-Mendoza. Quite the opposite. The sentence upon which the majority relies was applied to Lopez-Mendoza’s case, *583 where the only issue was whether a defendant could defend against deportation based on his illegal arrest. The Court gave the established answer: When a defendant’s only defense is the illegality of his arrest, he cannot suppress his “ ‘body’ or identity.” Id at 1039, 104 S.Ct. 3479. By contrast, in Sandoval-Sanchez’s case, where the issue was whether a criminal defendant could object to the introduction of illegally obtained evidence (including identity evidence) in a criminal proceeding, the answer was quite different: Any illegally obtained evidence (including identity evidence) must be suppressed. As the Court wrote, in differentiating Sandoval-Sanchez’s case from Lopez-Mendoza’s, “[Sandoval-Sanchez] objected not to his compelled presence at a deportation proceeding, but to evidence offered at that proceeding.” Id at 1040, 104 S.Ct. 3479.
In United States v. Guevara-Martinez, 262 F.3d 751, 753, 754 (8th Cir.2001), the Eighth Circuit carefully analyzed Lopez-Mendoza and came to the same conclusion:
In the jurisdictional case (Lopez-Mendoza), the Court said that the “body or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as the fruit of an unlawful arrest.” [468 U.S. at 1039, 104 S.Ct. 3479] But the Court addressed the evidentiary case (Sandoval-Sanchez) from a different tack. There the Supreme Court acknowledged the “general rule in a criminal proceeding [] that statements and other evidence obtained as a result of an unlawful, warrantless arrest are suppressible if the link between the evidence and the unlawful conduct is not too attenuated.” Id. at 1040-41, 104 S.Ct. 3479 ... (emphasis added). Thus, the Court’s reference to the suppression of identity appears to be tied only to a jurisdiction issue, not to an evidentiary issue.
We conclude that Lopez-Mendoza’s statement about the suppression of identity only refers to jurisdictional challenges, not to fingerprint evidence challenged in a criminal proceeding.
To the same effect are United States v. Olivares-Rangel, 324 F.Supp.2d 1218, 1224 (D.N.M.2004) (explicitly following 14827 the Eighth Circuit’s decision in Guevara-Martinez); United States v. Mendoza-Carrillo, 107 F.Supp.2d 1098, 1106, 1107 (D.S.D.2000) (“The language in Lopez-Mendoza should only be interpreted to mean that a defendant may be brought before a court on a civil or criminal matter even if the arrest was unlawful.” “This Court will not read the language of Lopez-Mendoza to preclude the suppression of fingerprints[.]”).
III. Ninth Circuit Cases
The majority relies on three decisions of this court and brushes aside a fourth, more recent decision. The three decisions upon which the majority relies misunderstand the “ ‘body’ or identity” sentence from Lopez-Mendoza, just as the majority misunderstands that sentence. Of course, a three-judge panel does not have the power to overrule these decisions, and I must, for present purposes, accept these three decisions of our circuit as binding law. But these three decisions do not go as far as the majority goes in this case. The fourth decision, which the majority brushes aside, distinguishes and limits the reach of the first three decisions. In my view, the fourth decision is flatly inconsistent with the decision reached by the majority. Absent an en banc proceeding, the majority is bound by that fourth decision, just as we are bound by the first three.
I begin by discussing the three decisions that misunderstand the “ ‘body’ or identity” sentence from Lopez-Mendoza. First, *584 in United States v. Guzman-Bruno, 27 F.3d 420 (9th Cir.1994), Guzman-Bruno was arrested by agents of the INS. For purposes of our decision, we assumed that the arrest was illegal. After his arrest, Guzman-Bruno admitted his name, and admitted that he had prior drug convictions and deportations. We refused to suppress evidence of Guzman-Bruno’s identity in his later criminal prosecution for illegal reentry. We wrote:
A defendant’s identity need not be suppressed merely because it is discovered as the result of an illegal arrest or search.... “The ‘body’ or identity of a defendant ... is never itself suppressible as a fruit of an unlawful arrest.” INS v. Lopez-Mendoza, 468 U.S. 1032, 1039, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984)[.] 27 F.3d at 421-22.
Second, in United States v. Parga-Rosas, 238 F.3d 1209 (9th Cir.2001), Parga-Rosas was arrested by San Diego police. Upon later questioning by the United States Border Patrol, Parga-Rosas admitted that he was here illegally. After Parga-Rosas admitted his crime, the Border Patrol took fingerprint exemplars and discovered his identity. Citing Guzman-Bruno, we held that because his fingerprints had not been taken to investigate whether he had committed a crime but rather merely to establish his identity, they could be admitted in a criminal trial. Id. at 1215.
Third, in United States v. Del Toro Gudino, 376 F.3d 997 (9th Cir.2004), Del Toro Gudino was arrested by the United States Border Patrol. After his arrest, Del Toro Gudino admitted that he was here illegally. The Border Patrol thus knew, based on Del Toro Gudino’s own admission, that he had committed a crime. In order to learn his name, the Border Patrol then took fingerprint exemplars. Del Toro Gudino sought to have the fingerprint evidence suppressed on the ground that he had been illegally arrested. Citing the Supreme Court’s sentence in Lopez-Mendoza and our decision in Guzman-Bruno, we held that this evidence of identity could not be suppressed.
The majority brushes aside our more recent decision, United States v. Garcia-Beltran, 389 F.3d 864 (9th Cir.2004). Garcia-Beltran was arrested without probable cause by Portland police. After his arrest, exemplars of his fingerprints were taken. Garcia-Beltran contended that the exemplars had been taken for purely investigatory purposes. The government argued that it did not matter whether the exemplars were taken for investigatory purposes because identity evidence could always be introduced at trial. The government relied on the Supreme Court’s decision in Lopez-Mendoza, and our decisions in Guzman-Bruno, Parga-Rosas, and Del Toro Gudino. We rejected the government’s argument.
We characterized Guzman-Bruno, Par-ga-Rosas, and Del Toro Gudino as holding that, when the government already knows that the defendant has committed a crime, and only takes his fingerprints to discover his identity, the fingerprint evidence may not be suppressed. We held that Guzman-Bruno, Pargar-Rosas, and Del Toro Gudino do not control a case where the government takes fingerprint exemplars for investigatory purposes, in order to discover whether the person has committed a crime. Garciar-Beltran is on all fours with the case now before us.
The majority contends that Garciar-Bel-tran does not control because it involved suppressing the original fingerprint exemplars taken by the Portland police, and did not involve compelling the production of a second set of exemplars. This is a classic example of a distinction without a difference. In practical effect, the majority holds that the fingerprint evidence seized *585 in violation of the Fourth Amendment can never be suppressed.
Under the majority’s opinion, law enforcement officers may arrest without probable cause any person who they think might possibly have committed a crime. They may suspect a person with a gun of being a convicted felon. Or they may suspect a Hispanic-looking person of being an illegal immigrant. They may take the fingerprints of this person to discover his or her name, and thereby learn his or her status and whether he or she has committed a crime. Under the majority’s decision, the formalities would, of course, be observed. The original fingerprints could not be introduced, for that—heaven forbid—would violate the exclusionary rule. Instead, a second set of fingerprints, made available through a motion to compel, would be introduced.
Same fingers, but different fingerprints. In practical effect, the Fourth Amendment and the exclusionary rule would be rendered meaningless. More to the immediate point, our recent decision in Garcia-Beltran would be eviscerated.
IV. Continuing Crime
The majority argues in support of its result that Ortiz-Hernandez’s crime is different from ordinary crimes. It writes, “We must also consider the nature of the crime Ortiz-Hernandez is facing—the continuing violation of federal law by his ongoing presence in the United States.” Majority op. at 14819. This argument was made, and explicitly rejected, in Lopez-Mendoza. The Supreme Court noted that release of Sandoval-Sanchez within the borders of this country “would clearly frustrate the express public policy against an alien’s unregistered presence in this country.” 468 U.S. at 1047, 104 S.Ct. 3479. For this, among other reasons, the Court held that the exclusionary rule does not apply in civil deportation proceedings. Under the Supreme Court’s opinion in Lopez-Mendoza, Sandoval-Sanchez could be deported despite the Fourth Amendment violation, just as Ortiz-Hernandez, the defendant in this case, may be deported.
But the Court in Lopez-Mendoza rejected the conclusion that the ongoing nature of Sandoval-Sanchez’s immigration violation required the elimination of the exclusionary rule in criminal proceedings. The nature of the immigration crime required the deportation of the illegal alien. But it did not require the elimination of the exclusionary rule to allow him to be criminally convicted. Responding directly to the concern expressed by the majority, the Court wrote in Lopez-Mendoza, “When the crime in question involves unlawful presence in this country, the criminal may go free, but he should not go free within our borders.” 468 U.S. at 1047, 104 S.Ct. 3479 (emphasis added).
V. Egregious Fourth Amendment Violation
Finally, relying on Del Toro Gudino, the majority states that the second set of fingerprint exemplars could be compelled even if Detective Anderson’s violation of the Fourth Amendment were egregious and race-based. Majority op. at 576-77. This statement ignores the Court’s explicit caution in Lopez-Mendoza, in discussing Sandoval-Sanchez’s case, that evidence seized pursuant to an egregious violation of the Fourth Amendment might be suppressed even in a deportation proceeding. The Court carefully noted that it was not dealing with “egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained,” 468 U.S. at 1050-51, 104 S.Ct. 3479, and that its holding was limited to nonegregious violations. *586 If the Court was concerned in Lopez-Mendoza to reserve the question of whether evidence seized pursuant to an egregious Fourth Amendment violation could be introduced in a civil deportation proceeding where the exclusionary rule does not apply, how can we blithely assume that evidence seized pursuant to an egregious, race-based violation can be admitted in a criminal proceeding? With this case in its current posture, I am bound by Del Toro Gudino, but an en banc court would of course be free to reconsider that holding.
Conclusion
This panel unanimously agrees that Detective Anderson’s purely investigatory search violated the Fourth Amendment. We also unanimously agree that the fingerprint exemplar taken by Detective Anderson must be suppressed. But the panel majority compels the production of a second fingerprint exemplar even though it has suppressed the first one. This decision conflicts with the Supreme Court’s decision in Lopez-Mendoza, with the Eighth Circuit’s decision in Guevarctr-Mar-tinez, and with our decision in Garcich-Beltran. I respectfully but emphatically dissent.