**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

JOSE LUIS ORTIZ-HERNANDEZ,
*Defendant-Appellee.*

Nos. 03-30355
03-30371
03-30356

D.C. No.
CR-00-00071-JAR
District of Oregon,
Portland

ORDER

Filed March 30, 2006

Before: Thomas M. Reavley,* William A. Fletcher, and
Richard C. Tallman, Circuit Judges.

Order;
Dissent by Judge Paez

_____

## ORDER

Judges Reavley and Tallman have voted to deny the petition for panel rehearing; Judge Tallman has voted to deny the petition for rehearing en banc and Judge Reavley so recommends. Judge W. Fletcher has voted to grant the petition for panel rehearing and the petition for rehearing en banc.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the

_____

*The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. 35.

The petition for panel rehearing and the petition for rehearing en banc are denied.

---

PAEZ, Circuit Judge, with whom PREGERSON, REINHARDT, HAWKINS, THOMAS, WARDLAW, W. FLETCHER, FISHER, and BERZON, Circuit Judges, join, dissenting from denial of rehearing en banc:

## I.   Introduction

The majority in this case adopts a misreading of *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984), that our circuit squarely rejected in *United States v. Garcia-Beltran*, 389 F.3d 864 (9th Cir. 2004), and that is in direct conflict with the language of *Lopez-Mendoza* itself. In so doing, the majority eviscerates, for all practical purposes, the exclusionary rule's application to fingerprint evidence, and encourages questionable police practices. I respectfully dissent from my colleagues' decision not to rehear this case en banc.

Jose Luis Ortiz-Hernandez was arrested by Portland, Oregon officers on suspicion of drug-related activity. Those charges were later dropped, and Ortiz-Hernandez was indicted under 8 U.S.C. § 1326 for illegal reentry. In the § 1326 case, the district court suppressed fingerprint evidence taken in violation of Ortiz-Hernandez's Fourth Amendment rights and denied the Government's motion to compel a second set of fingerprint exemplars. The Government appealed the district court's denial of that motion to our court.

There is but one issue in dispute in this case. All members of the three-judge panel affirmed the district court's ruling that the officers did not have probable cause to arrest Ortiz-

Hernandez. All three judges further agreed that Ortiz-Hernandez's fingerprints were taken for investigatory purposes and had to be suppressed. In a move that defies logic, however, the majority held that the Government—which has not demonstrated any independent source dissipating the taint of the earlier constitutional violation—may compel a new set of fingerprint exemplars, effectively gutting the exclusionary rule. As Judge W. Fletcher explained in his dissent, "the majority allows the government to accomplish with the second fingerprint exemplars *precisely the same thing it holds the government cannot accomplish with the first.*" *United States v. Ortiz-Hernandez*, 427 F.3d 567, 580 (9th Cir. 2005) (per curiam) (W. Fletcher, J., dissenting) (emphasis added).

Recognizing that its "holding here limits the theoretical effect of suppressing the initial set of wrongfully obtained fingerprint exemplars," *id.* at 578 (majority opinion), the majority justifies its result as "compelled by *United States v. Parga-Rosas*, 238 F.3d 1209 (9th Cir. 2001)," *Ortiz-Hernandez*, 427 F.3d at 577. *Parga-Rosas* is easily distinguished. It is *Garcia-Beltran* and *Lopez-Mendoza* that compel the correct result in this case: We should affirm the district court's denial of the Government's motion.

## II. The Majority Misreads *Lopez-Mendoza*

### A.

One seemingly innocuous sentence, reiterating a well established principle of personal jurisdiction, has led to amaranthine confusion. In *Lopez-Mendoza* the Supreme Court stated that "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest." *Lopez-Mendoza*, 468 U.S. at 1039. The Court made this statement in the context of addressing a challenge by Lopez-Mendoza "to the fact that he had been summoned to a deportation hearing following an unlawful arrest." *Id.* at 1040. Lopez-Mendoza "entered no

objection to the evidence offered against him." *Id.* The Court cited six cases, which all considered whether *jurisdiction* over a defendant or seized res properly existed. *Id.* at 1039-40. I see no way to read the "body or identity" sentence in *Lopez-Mendoza* as anything other than an affirmation of the established principle that an illegal arrest does not bar prosecution for a crime.

One need look no further than *Lopez-Mendoza* itself to confirm that the "body or identity" language is inapplicable where a defendant raises a Fourth Amendment *evidentiary* challenge. The second respondent in *Lopez-Mendoza*, Sandoval-Sanchez, "objected not to his compelled presence at a deportation proceeding, but to evidence offered at that proceeding." *Id.* at 1040. Distinguishing Sandoval-Sanchez's case from Lopez-Mendoza's, the Supreme Court cited *Wong Sun v. United States*, 371 U.S. 471 (1963), and stated that "[t]he general rule in a criminal proceeding is that statements and other evidence obtained as a result of an unlawful, warrantless arrest are suppressible if the link between the evidence and the unlawful conduct is not too attenuated." *Lopez-Mendoza*, 468 U.S. at 1040-41. The Court did not create an exception for evidence that tends to establish a defendant's identity, such as fingerprint evidence. Nor did it indicate any intention to overrule *Davis v. Mississippi*, 394 U.S. 721 (1969) (holding that fingerprint evidence obtained in the absence of probable cause to arrest must be suppressed), and *Hayes v. Florida*, 470 U.S. 811 (1985) (same).

The *Ortiz-Hernandez* majority misreads the "body or identity" sentence as applying to evidentiary challenges, and in so doing conflates two distinct lines of cases. The *Frisbie v. Collins*, 342 U.S. 519 (1952), line of cases holds that a tribunal has jurisdiction to try a defendant even if his presence in court was obtained through illegal means. It was the *Frisbie* line of cases, addressing personal jurisdiction, that the Supreme Court cited to immediately after the "body or identity" sentence in *Lopez-Mendoza*. *See Lopez-Mendoza*, 468 U.S. at

1039-40. The *Wong Sun* line of cases—requiring suppression of evidence discovered as a consequence of an illegal arrest, unless an independent source dissipates the taint of the illegality—is distinct and applies in cases where the government seeks to use evidence obtained in violation of the Fourth Amendment. The majority's reading of *Lopez-Mendoza* takes language from the *Frisbie* line of cases and applies it to the *Wong Sun* line of cases in a way that renders *Wong Sun* inapplicable to fingerprint evidence. The "fruit of the poisonous tree" doctrine contains no such exception. *See Davis*, 394 U.S. at 724 ("*[A]ll* evidence obtained by searches and seizures in violation of the Constitution is . . . inadmissible in . . . court. *Fingerprint evidence is no exception to this comprehensive rule*." (internal quotation marks and explanatory parenthetical omitted) (second emphasis added)).

Other courts have recognized the potential for misreading the "body or identity" language and correctly concluded that it applies to jurisdictional, not evidentiary, challenges. *See, e.g.*, *United States v. Garcia*, 2005 WL 3556089, at *8 (D. Utah Dec. 28, 2005); *United States v. Olivares-Rangel*, 324 F. Supp. 2d 1218, 1223-24 (D.N.M. 2004); *United States v. Mendoza-Carrillo*, 107 F. Supp. 2d 1098, 1105-07 (D.S.D. 2000); *State v. Perkins*, 760 So. 2d 85, 86-87 (Fla. 2000) (per curiam); *see also United States v. Navarro-Diaz*, 420 F.3d 581, 584-86 (6th Cir. 2005) (explaining that *Lopez-Mendoza*'s "body or identity" language does not apply to challenges to fingerprint evidence, but rather requires admission in court of a defendant's identity, i.e., who he is).[1]

---

[1]*But see United States v. Bowley*, 435 F.3d 426, 430-31 (3d Cir. 2006) (citing *Lopez-Mendoza* and holding that a defendant's identity and immigration file are not suppressible); *United States v. Roque-Villanueva*, 175 F.3d 345, 346 (5th Cir. 1999) (same). Neither *Bowley* nor *Roque-Villanueva* concerned fingerprint evidence. In *Bowley*, the district court suppressed illegally obtained fingerprint evidence as fruit of the poisonous tree. *United States v. Bowley*, 2005 WL 1398632, at *3 (D.V.I. June 8, 2005). The Government did not appeal that order to the Third Circuit. *See*

Indeed, our court made this distinction in *Garcia-Beltran* and even earlier in *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1063-64 (9th Cir. 1994) (recognizing that *Lopez-Mendoza*'s "body or identity" language applies to jurisdictional, not evidentiary, challenges, in the civil forfeiture context), *superseded by statute on other grounds as stated in United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002). In *Garcia-Beltran*, we explicitly rejected the Government's argument that *Lopez-Mendoza*'s "body or identity" language applied to fingerprint evidence:

> Garcia-Beltran, however, did not seek to suppress the fact of his identity or "body"; he recognized that he could lawfully be compelled to appear in court. Rather, he sought to exclude all evidence obtained from him as a result of his illegal arrest, including evidence that would tend to establish his true identity, such as fingerprints, photographs and oral statements. Contrary to the government's argument, *Lopez-Mendoza* does not preclude suppression of evidence unlawfully obtained from a suspect that may in a criminal investigation establish the identity of the suspect.

*Garcia-Beltran*, 389 F.3d at 866-67. We explained that *United States v. Guzman-Bruno*, 27 F.3d 420 (9th Cir. 1994), and *United States v. Del Toro Gudino*, 376 F.3d 997 (9th Cir. 2004), stood only for the proposition that a defendant may not suppress the fact of who he is, and we held those cases inapplicable to the question of whether to suppress fingerprint evi-

---

*Bowley*, 435 F.3d at 429. In the Fifth Circuit, in a case decided subsequent to *Roque-Villanueva*, the district court suppressed a defendant's fingerprints and confession, but not his body, identity, or immigration file. *United States v. Herrera-Ochoa*, 245 F.3d 495, 497 (5th Cir. 2001). The Court of Appeals affirmed the district court's rulings. *Id.* at 498.

dence. *See Garcia-Beltran*, 389 F.3d at 866 ("We acknowledged [the *Lopez-Mendoza*] rule in *Guzman-Bruno* where . . . we said that '[a] defendant's identity need not be suppressed merely because it is discovered as the result of an illegal arrest or search.' " (third alteration in original)); *id.* (quoting *Del Toro Gudino* as stating, " 'We continue to hold today that the simple fact of who a defendant is cannot be excluded, regardless of the nature of the violation leading to his identity.' "); *id.* at 867 n.4 ("*Guzman-Bruno* did not directly address the problem of fingerprints taken for an investigative purpose in the context of potential criminal violations of immigration law . . . . [*Guzman-Bruno*] did not involve fingerprint evidence and the need to classify it as either investigatory or identification evidence (and thus *Hayes* and *Davis* were not implicated).").

*Garcia-Beltran* then cited to and quoted from the Eighth Circuit's decision in *United States v. Guevara-Martinez*, 262 F.3d 751 (8th Cir. 2001), which held that *Lopez-Mendoza*'s "body or identity" language applies only in the jurisdictional, not evidentiary, context. *Garcia-Beltran*, 389 F.3d at 868. By adopting a contrary interpretation of *Lopez-Mendoza*, the *Ortiz Hernandez* majority has created an intracircuit split with our holding in *Garcia-Beltran*.[2]

---

[2]To the extent, if any, that *Guzman-Bruno* and *Del Toro Gudino* held that *Lopez-Mendoza*'s "body or identity" language applies in the evidentiary context, they were wrongly decided, and our court unfortunately passes up an opportunity to reconsider their holdings as part of en banc reconsideration of *Ortiz-Hernandez*. In any event, *Garcia-Beltran* authoritatively interpreted *Guzman-Bruno* and *Del Toro Gudino* as inapplicable to the issue of suppression of fingerprint evidence, and the majority's holding to the contrary creates an intracircuit conflict on the meaning of these two cases. The majority may disagree with our decision in *Garcia-Beltran*, but it has an obligation to apply the binding law of our circuit to the facts of Ortiz-Hernandez's case. Our court errs by not correcting the majority's failure to discharge this duty.

**B.**

As Judge W. Fletcher recognized, *Garcia-Beltran* is on all fours with the present case:

> Garcia-Beltran, like Ortiz-Hernandez, was illegally arrested by an officer of the Portland Police Department. His fingerprints, like Ortiz-Hernandez's, were taken after arrest. Like Ortiz-Hernandez, he was subsequently charged with illegal entry. At Garcia-Beltran's criminal trial, the district court admitted his fingerprint exemplars as evidence of his identity. We reversed and remanded, holding that the fingerprint exemplars must be suppressed if they were taken for purely investigatory purposes.

*Ortiz-Hernandez*, 427 F.3d at 580 (W. Fletcher, J., dissenting) (internal quotation marks and citation omitted). The majority incorrectly limits *Garcia-Beltran* to the initial set of fingerprints. By its clear language, *Garcia-Beltran* applies to any fingerprint exemplars *taken for purely investigatory purposes*.

The question to ask in this case is whether the Government seeks fingerprint exemplars to connect a suspect to a crime, or instead to confirm the identity of a properly charged defendant. Sometimes fingerprint exemplars are insuppressible evidence confirming a defendant's identity, *see Parga-Rosas*, 238 F.3d at 1215 ("Because the fingerprints were not taken for investigatory purposes but for the sole purpose of proving Parga-Rosas's identity, the Fourth Amendment is not implicated."), and sometimes they are evidence connecting a suspect to a crime, suppressible under *Mapp v. Ohio*, 367 U.S. 643 (1961), *see Hayes*, 470 U.S. at 813-15; *Davis*, 394 U.S. at 724. The distinction turns on whether the fingerprints were taken for investigatory purposes, or instead are used to confirm the identity of a defendant the government already has probable cause to arrest and indict. *See Rise v. Oregon*, 59 F.3d 1556, 1560 (9th Cir. 1995) ("Thus, in the fingerprinting

context, there exists a constitutionally significant distinction between the gathering of fingerprints from free persons to determine their guilt of an unsolved criminal offense and the gathering of fingerprints for identification purposes from persons within the lawful custody of the state."), *abrogated on other grounds as recognized in Vore v. U.S. Dep't of Justice*, 281 F. Supp. 2d 1129, 1134 n.1 (D. Ariz. 2003).

I do not dispute the proposition that, once the government has independent, untainted evidence that permits it to book and indict a defendant, it may obtain a fingerprint exemplar for use at trial. *See id.* Those facts, however, are not present in Ortiz-Hernandez's case. Ortiz-Hernandez was arrested illegally and taken to the police station, where officers proceeded to run the false names he had provided through their databases. When the officers' search came up empty, they arranged for Ortiz-Hernandez to speak with immigration officials. When that interview produced no useful information, the officers sent Ortiz-Hernandez for fingerprinting and then ran his prints through another database. Eureka! Just as the officers suspected, Ortiz-Hernandez was in this country illegally. The crucial point, however, is that it was not until this final search produced a hit that the officers learned Ortiz-Hernandez's true identity and had probable cause to arrest him for a violation of § 1326. *See Ortiz-Hernandez*, 427 F.3d at 578 ("It is true that the government would not have known Ortiz-Hernandez's identity without having unlawfully taken the first set of fingerprints . . . .").

The Government has not made a showing that it has procured untainted evidence of Ortiz-Hernandez's guilt. There is no indication that, after the district court suppressed Ortiz-Hernandez's initial set of fingerprints, the Government undertook an additional investigation to uncover evidence of Ortiz-Hernandez's alleged crime or his identity, or that the Government had sufficient evidence to indict Ortiz-Hernandez before they obtained his fingerprints. Without such a showing, the Government's request for a second set of fingerprint exem-

plars is investigatory and must be denied as fruit of the poisonous tree.

## C.

The majority's statement to the contrary notwithstanding, *Parga-Rosas* supports this conclusion. Parga-Rosas presented a "green card" to police, which in turn led to discovery of his immigration file—prior to any illegal conduct on the officers' part. It was only after this information was obtained that Parga-Rosas was questioned without having been read his *Miranda* rights. Parga-Rosas then was taken to a border patrol station and fingerprinted. The district court suppressed the fingerprints as fruits of an illegal arrest. It was a second set of fingerprints, taken five months after his initial arrest, that were at issue in *Parga-Rosas*. We correctly affirmed the district court's denial of Parga-Rosas's motion to suppress this second set of fingerprints on the theory that they were not taken for investigatory purposes but rather to prove his identity. *Parga-Rosas*, 238 F.3d at 1215. The government had independent, untainted evidence of Parga-Rosas's crime without the first set of fingerprints. In contrast to Ortiz-Hernandez's case, the second exemplar was not investigatory evidence necessary to build the case against Parga-Rosas, but instead evidence confirming Parga-Rosas's identity that was admissible at trial. The majority's reliance on *Parga-Rosas* is therefore misplaced.

Contrary to the majority's conclusion, *see Ortiz-Hernandez*, 427 F.3d at 578 n.5 ("While the dissent is correct to note that the general rule under the Fourth Amendment is to suppress unlawfully obtained evidence, the [Supreme] Court [in *Lopez-Mendoza*] created a specific exclusion from that general rule for evidence of identity."), not all "identity" evidence is insuppressible. Rather, evidence tending to establish a defendant's identity is suppressible when unconstitutionally obtained and used for investigatory purposes, but may

be introduced in court to confirm the identity of a properly charged defendant.

If there was any question whether evidence that establishes a defendant's identity could be suppressed under *Wong Sun*, that question was answered by the Supreme Court in *United States v. Crews*, 445 U.S. 463 (1980). *Crews* upheld a trial court's decision to admit an in-court identification. But prior to this in-court identification, the defendant in *Crews* was the subject of out-of-court photographic and lineup identifications that were products of an arrest without probable cause. The Supreme Court reiterated the basic principles of *Wong Sun*'s "fruit of the poisonous tree" analysis, *id.* at 470-71, and affirmed the trial court's ruling that the photographic and lineup identifications (i.e., evidence tending to establish the defendant's identity) were inadmissible at trial as "suppressible fruits of the Fourth Amendment violation," *id.* at 472.

In affirming the trial court's admission of the in-court identification, the Court emphasized that the victim's presence in the courtroom, where she made the identification, was not the product of any illegal police conduct. *Id.* at 471-72. Relying on the *Frisbie* line of cases, the Court also held that Crews could not challenge his own presence at trial. *Id.* at 474. Because the in-court identification was not tainted by the illegal arrest, it was not suppressed. The Court explicitly recognized that if the out-of-court identifications had affected the reliability of the in-court identification, the latter would be tainted and could be suppressed as the fruit of an illegal arrest. *Id.* at 472-73. In other words, the Court stated that "identity" evidence used to build a case against a defendant could and would be suppressed if it was improperly obtained, under the principles of *Wong Sun*.

Ortiz-Hernandez raises an evidentiary challenge to the use of illegally obtained fingerprint evidence at his criminal trial. He does not contest the district court's jurisdiction over his person, nor does he argue that the district court must exclude

at trial the fact of who he is. Under *Garcia-Beltran*, it is *Hayes* and *Davis*, not *Lopez-Mendoza*, *Guzman-Bruno*, or *Del Toro Gudino*, that govern the outcome in this case.

### III.   The Majority's Holding Creates a Split with the Eighth Circuit

#### A.

Not only does the majority misconstrue the meaning of *Lopez-Mendoza*'s "body or identity" language and its applicability to fingerprint evidence, the opinion in *Ortiz-Hernandez* creates an intercircuit split. In *Guevara-Martinez*, which we quoted with approval in *Garcia-Beltran*, the Eighth Circuit "conclude[d] that *Lopez-Mendoza*'s statement about the suppression of identity only refers to jurisdictional challenges, not to fingerprint evidence challenged in a criminal proceeding." *Guevara-Martinez*, 262 F.3d at 754. The Eighth Circuit held that Guevara-Martinez's fingerprints were obtained for investigatory purposes, applied *Wong Sun*, and suppressed them. *Id.* at 755-56.

The Eighth Circuit acknowledged that Guevara-Martinez's fingerprints could be obtained in civil deportation proceedings, and these validly obtained prints used to reindict him on criminal charges. Despite this potential practical consequence, the court refused "to ignore [the Government's] use of tainted evidence," and suppressed the invalidly obtained fingerprints. *Id.* at 756.

The Eighth Circuit has adhered to its rule that illegally obtained fingerprint evidence may not be used in § 1326 prosecutions despite the government's ability to obtain exemplars in civil deportation proceedings. *See, e.g.*, *United States v. Flores-Sandoval*, 422 F.3d 711, 715 (8th Cir. 2005); *United States v. Perez-Perez*, 337 F.3d 990, 994 (8th Cir. 2003); *United States v. Rodriguez-Arreola*, 270 F.3d 611, 619 (8th Cir. 2001). Whether or not the Eighth Circuit is correct that

a civil deportation proceeding is sufficient to dissipate the taint of an illegality in a § 1326 proceeding, *see Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920) (stating that merely requiring an extra step to procure illegally obtained evidence "reduces the Fourth Amendment to a form of words"), the Government is not attempting to introduce properly obtained fingerprints in Ortiz-Hernandez's criminal trial. Instead, it seeks an order from the district court judge compelling production of fingerprint exemplars in the criminal case.

The Eighth Circuit has not, as we now do in *Ortiz-Hernandez*, turned a blind eye to the *means* by which the government obtains fingerprints for use at trial. The Eighth Circuit has recognized that the government is likely to initiate deportation proceedings against defendants charged with violating 8 U.S.C. § 1326 and to obtain fingerprint exemplars in those civil proceedings. Under the Eighth Circuit's case law, the government may then use those *untainted* prints in the criminal case. Nothing in the Eighth Circuit's precedent, however, would permit the Government to obtain fingerprint exemplars through compelled production in Ortiz-Hernandez's criminal case. To the contrary, the Eighth Circuit has been crystal clear that it will not tolerate what the *Ortiz-Hernandez* majority has allowed the Government to do:

> [T]he government points out that a set of untainted fingerprints can be obtained in the civil deportation proceedings that Guevara-Martinez will inevitably face. Since Guevara-Martinez can be recharged using the new set of fingerprints, the government asks us to ignore its use of tainted evidence in this case. We decline to reverse the district court on this alternate ground. In *Davis*, the Supreme Court refused to affirm a conviction because the authorities there could have used a second set of prints that were validly obtained, stating that "[t]he important thing is that those administering the criminal law under-

stand that they must [obtain the evidence the right way].”

*Guevara-Martinez*, 262 F.3d at 756 (quoting *Davis*, 394 U.S. at 72[5] n.4) (second and third alterations in original).

No case of which I am aware, in this circuit or the Eighth Circuit, has held that fingerprint exemplars may be obtained through compelled production in a criminal case in the absence of probable cause to arrest or indict a defendant. No case, that is, until this one.

## B.

As I read the case law, the Government may continue to prosecute Ortiz-Hernandez for the § 1326 violation. It may introduce evidence to prove that he is the same person who previously was removed from the country. But the Government must use *untainted* evidence. There is a price to pay for obtaining evidence the wrong way, and that price is suppression. The Government is not suddenly exempted from paying that price because the evidence at issue is fingerprint evidence.

Perhaps the Government will be unable to make its case against Ortiz-Hernandez without using tainted evidence. That is an accepted consequence of the exclusionary rule. As the Supreme Court explained in *Lopez-Mendoza*, when the government illegally obtains evidence of an immigration offense, the upshot is that the crime might go unpunished. *See Lopez-Mendoza*, 468 U.S. at 1047 (“The constable’s blunder may allow the criminal to go free . . . .”). But the exclusionary rule does not apply in civil deportation proceedings, and for that reason Ortiz-Hernandez likely will be deported. *See id.* (“When the crime in question involves unlawful presence in this country, the criminal may go free, but he should not go free within our borders.”).

There has never been a finding in this case that the taint of Ortiz-Hernandez's illegal arrest has been dissipated. The majority did not so hold. Instead, it relied on an incorrect, previously rejected interpretation of *Lopez-Mendoza*'s "body or identity" language. Our court should correct this error by rehearing *Ortiz-Hernandez* en banc.

### IV.   Conclusion

The *Ortiz-Hernandez* majority fundamentally misunderstands the Supreme Court's decision in *Lopez-Mendoza*. This misunderstanding leads the majority to a holding that conflicts with our precedent in *Garcia-Beltran* and the Eighth Circuit's decision in *Guevara-Martinez*. It also leads to the bizarre result that *Mapp v. Ohio* and *Wong Sun* no longer apply to fingerprint evidence, because *Lopez-Mendoza* somehow overruled *Davis* and *Hayes* sub silentio. This cannot be correct.

Because *Ortiz-Hernandez* creates confusion over the meaning of *Lopez-Mendoza* in this circuit, produces an intercircuit conflict with the Eighth Circuit, and renders the exclusionary rule meaningless when applied to fingerprint evidence, I believe our court should rehear this case en banc. The majority's conclusion that the Government may compel a second set of fingerprints and substitute them for the illegally obtained first set can only serve to promote disrespect for the law and disdain for the judicial process. I respectfully dissent from the court's decision to deny Ortiz-Hernandez's petition for rehearing en banc.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2006 Thomson/West.