UNITED STATES of America,
Plaintiff–Appellee,

v.

Lyle Gerald JOHNS,
Defendant–Appellant.

No. 86–1220.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 14, 1987.

Reargued and Submitted May 11, 1988.

Reargued and Submitted Feb. 16, 1989.

Decided Dec. 7, 1989.

Walter B. Nash, III, Tucson, Ariz., for defendant-appellant.

Eugene R. Bracamonte, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before MERRILL and NORRIS, Circuit Judges, and ENRIGHT, District Judge *.

* Honorable William B. Enright, United States District Judge for the Southern District of Cali-  fornia, sitting by designation.

WILLIAM A. NORRIS, Circuit Judge:

In appealing his marijuana-related convictions, Johns challenges the district court's failure to suppress marijuana which he claims was the fruit of an illegal stop. We find his contention meritorious and reverse his conviction.

## I

In the early morning of August 4, 1981, a Tucson Customs agent requested the Pima County Sheriff's Office to investigate the landing of a small airplane at Tucson Dragway, a private landing strip owned by Johns. The time and place of the landing, plus an informant's tip, made Customs suspicious of illegal activity. Sheriff's officers stopped Johns and his codefendant, Dennis Hearron, as they were leaving the airstrip. According to the officers, four or five vehicles and six or seven officers surrounded Johns' truck to effect the stop. As a result of the stop, the officers learned the identity of Johns and Hearron. Without a warrant, the officers searched Johns' truck and airplane but discovered no contraband. At the suppression hearing, the government conceded that the stop violated the Fourth Amendment.

As a result of the officers' identification of Johns and Hearron, Customs agents drew upon prior information about Johns' association with suspected narcotics smugglers and quickly began surveillance at the house of one associate. From the house, the agents followed several individuals to the marijuana that was subsequently seized. At trial Johns moved to suppress the marijuana as the fruit of the previous illegal stop and search at the airstrip.[1] The district court denied the motion, holding that the "mere identification" of Johns during the illegal stop did not taint the marijuana. The only issue presented by this appeal is whether the marijuana must be suppressed as the fruit of Johns' identification during the illegal stop at the airstrip.[2]

## II

We uphold the district court's findings of fact during a suppression hearing unless they are clearly erroneous. *United States v. Echegoyen*, 799 F.2d 1271, 1277 (9th Cir.1986). We review de novo the mixed question of fact and law whether evidence deriving from an illegal search is sufficiently tainted to require suppression, because legal concepts must be applied and judgment exercised about the values that animate the Fourth Amendment. *United States v. McConney*, 728 F.2d 1195, 1200–01 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *cf. United States v. Limatoc*, 807 F.2d 792, 794 (9th Cir.1987) (the ultimate issue of the lawfulness of a search is reviewed de novo).

## III

The district court found that the surveillance which led to the seizure of the marijuana was undertaken as a direct result of the illegally obtained identification of Johns and Hearron. Nonetheless, the district court denied Johns' suppression motion on the ground that a mere identification illegally obtained is insufficient as a matter of law to taint subsequently acquired evidence.[3]

1. Prior to trial, the district court suppressed the marijuana, holding illegal the warrantless search of the packages which contained the marijuana. This court upheld the suppression. The Supreme Court reversed and remanded the case to the trial court. *United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985).

2. Johns' appeal was first heard on August 14, 1987. A September 22, 1987, memorandum disposition affirmed his conviction. 829 F.2d 41. On November 3, 1987, Johns successfully petitioned the court for rehearing. Following rearg-

gument heard May 11, 1988, the court ordered a limited remand to the district court for further factual findings. After additional argument, the court issued a second memorandum disposition on March 31, 1989. On April 7, 1989, Johns again petitioned for rehearing, resulting in this opinion.

3. At the suppression hearing, the district court indicated its desire for guidance on this issue, stating, "I am going to make a finding that he did go to Duarte's and Leon's as a result of the identification and we might as well have a deci-

On appeal, the government does not rely upon the district court's holding that an illegally obtained identification cannot taint later discovered evidence; rather, the government argues that Customs' independent leads and information rendered the identification insubstantial or *de minimis* in the chain of events which led to the marijuana.[4] We agree with the government that traditional taint analysis applies. We disagree, however, with the government's argument that the identification did not sufficiently taint the marijuana to justify its suppression. We hold that the evidence must be suppressed because the illegally obtained identification significantly directed the investigation which led to the marijuana.

It is fundamental that the exclusionary rule extends beyond evidence directly obtained in violation of the Fourth Amendment to the "fruit of the poisonous tree." *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939). As we stated in *United States v. Chamberlin*, 644 F.2d 1262, 1269 (9th Cir.1980), *cert. denied*, 453 U.S. 914, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981):

> The focus is on the causal connection between the illegality and the evidence; and, the burden of showing admissibility rests on the prosecution. [*Dunaway v. New York*, 442 U.S. 200, 217–18, 99 S.Ct. 2248, 2259–60, 60 L.Ed.2d 824 (1979)]. In this circuit, we have stated the test to be whether the illegal activity tends to significantly direct the investigation to the evidence in question. *United States v. Cales*, 493 F.2d 1215 (9th Cir.1974), *United States v. Bacall*, 443 F.2d 1050, 1057 (9th Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 565, 30 L.Ed.2d 557 (1971).

In the instant case, the marijuana cannot be admitted unless the connection between the illegally obtained identification and the marijuana was sufficiently attenuated as to dissipate the taint caused by the illegality. *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963); *see also United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1396 (9th Cir. 1989). The question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 417 (quoting Maguire, *Evidence of Guilt* 221 (1959)).

Our court has considered the question in terms of the substantiality of the taint. "[I]f the illegally obtained leads were so insubstantial that their role in the discovery of the evidence sought to be suppressed 'must be considered *de minimis*,' then suppression is inappropriate." *United States v. Bacall*, 443 F.2d 1050, 1056 (9th Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 565, 30 L.Ed.2d 557 (1971) (quoting *Durham v. United States*, 403 F.2d 190, 196 (9th Cir.1968)). In *Bacall*, the court emphasized that it was not using just a "but for" test, but was inquiring whether the illegally obtained evidence "tended significantly" to direct the investigation toward the evidence in question. *Id.; see also United States v. Brandon*, 467 F.2d 1008, 1010 (9th Cir.1972).

Here, the district court made an express finding that Customs' surveillance occurred "as a direct result of the identification of the defendants." Accepting this finding as not clearly erroneous, we cannot hold that the role of the identification was insignificant or *de minimis*, as the government contends. The illegal stop was the impetus for the chain of events leading to

---

sion somewhere down the line on this kind of a case."

**4.** During 1980, Customs received information that Johns and some of his associates were suspected of smuggling narcotics. This information involved fuel purchases at a small airport near Tucson and links to a convicted narcotics offender. There were no investigative reports for at least five months prior to the

August 4, 1981, stop at the airstrip. The government asserts that based on this information, Customs was suspicious and decided to check the residences of the suspects *prior* to the airport identification. However, we accept as not clearly erroneous the district court's finding that the surveillance was undertaken as a result of the identification.

the marijuana and thus is too closely and inextricably linked to the discovery for the taint to have dissipated. In sum, the government has failed to meet its burden of showing that the discovery of the marijuana was not tainted by the illegal stop.[5]

## CONCLUSION

Because the marijuana is a fruit of the illegal stop of Johns at the Tucson Dragway, it was obtained in violation of the Fourth Amendment and therefore must be suppressed. Accordingly, the judgment of conviction is REVERSED and the case is REMANDED for further proceedings.

ENRIGHT, District Judge, dissenting:

This case has an unusual and protracted history. In 1981, the district court suppressed the marijuana for failure to obtain a warrant prior to taking core samples of the suspected contraband. This court upheld the suppression, but the United States Supreme Court reversed and remanded. *United States v. Johns,* 707 F.2d 1093 (9th Cir.1983), *rev'd,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985).

On remand, appellant again moved to suppress the marijuana, on grounds that its seizure was tainted by a prior illegal vehicle detention. The district court denied the motion, and appellant was tried and convicted in June 1986. All other defendants entered guilty pleas and were sentenced.

On July 30, 1986, Johns filed an appeal, which was heard on August 14, 1987. His conviction was affirmed by this court pursuant to Memorandum Decision dated Sep-

tember 22, 1987. On November 3, 1987, Johns petitioned the court for a rehearing which was conducted on May 11, 1988.

This case was subsequently remanded to the district court for the limited purpose of making additional findings of fact. In light of the district court's findings, this court ordered supplemental briefing. Oral argument was held on February 16, 1989. This court again reaffirmed Johns' conviction by Memorandum Decision filed March 31, 1989, while vacating the September 22, 1987 Memorandum Decision. Now nearly nine years after the arrest of Johns and after this court has twice affirmed his conviction, the majority reverses.

The district court in its supplemental findings of fact No. 7 acknowledged that Customs Agent Harper decided to set up surveillance at Duarte's house as a direct result of the identification of the defendants during the illegal stop. The sole issue now before this court is whether the illegally obtained identification sufficiently taints the later obtained evidence to justify its suppression.

The majority suppresses the evidence on the grounds that the illegally obtained identification of Johns significantly directed the investigation which led to the marijuana. According to the majority, "[t]he illegal stop was the impetus for the chain of events leading to the marijuana" and thus was too closely linked to the discovery for the taint to have dissipated. Therefore, the role of the identification of Johns was not *de minimis* or insignificant. I disagree.

---

**5.** The government also has argued that the marijuana is admissible either because it was discovered based upon an independent source or because it inevitably would have been discovered. Neither argument has merit. The "independent source" exception operates to admit evidence that is actually found by legal means through sources unrelated to the illegal search. *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920). It "allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 2508, 81 L.Ed.2d 377 (1984); *United States v. Merriweather,* 777 F.2d 503, 506 (9th Cir.1985), *cert. denied,* 475

U.S. 1098, 106 S.Ct. 1497, 89 L.Ed.2d 898 (1986). The district court's finding that Customs set up surveillance as a result of the identification precludes a finding that Customs set up the surveillance based upon independent information in its possession. Therefore, the "independent source" doctrine does not apply. The government's other claim, that the marijuana inevitably would have been discovered, was rejected by the district court which explicitly found that the "Customs Service would *not* inevitably have discovered the [challenged] evidence ... regardless of *any* information" derived from the illegal stop. (Emphasis in original.) The government does not claim that the district court erred in making this determination.

The question, as put by Judge Duniway in *United States v. Bacall*, 443 F.2d 1050, 1056 (9th Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 565, 30 L.Ed.2d 557 (1971), is "... what kind of *direction* or *impetus* did the illegal seizure give to the ... investigation?" In answering that question, Judge Duniway stated:

> Where the evidence sought to be suppressed was discovered through utilization of some legally obtained leads, as well as some illegally obtained leads, the substantiality of the legally obtained leads may influence the determination whether the evidence ought to be suppressed. And if the illegally obtained leads were so insubstantial that their role in the discovery of the evidence sought to be suppressed "must be considered *de minimis*," then suppression is inappropriate.

*Id.* at 1056 (citation omitted).

It is important to note that the government's investigation of Johns was in no way initiated by, or dependent upon, the illegal stop and search. The district court in its findings found that there was a prior investigation involving Johns, Duarte, and Leon. The Customs Service had been investigating Johns and Duarte prior to the August 4 seizure, and it had secured information implicating Johns in narcotics trafficking. It was further known that Duarte had a record of narcotics-related offenses, and that Leon's and Duarte's activities were connected.

Moreover, before proceeding to the intersection during the morning of the search, Agent Harper had received indications that criminal activity was in progress. He knew from an anonymous phone call that an airplane was landing at Johns' dragstrip and that a vehicle was meeting the plane. He also knew that Leon had picked up large drums of aviation fuel at the Sierra Vista airport. Thus, contrary to the majority's assertions, the investigation had both impetus and direction prior to the illegal stop.

The information obtained from the illegal stop goes solely to the issue of identity and, therefore, was insubstantial relative to the legally obtained leads. *See United States v. Patino*, 649 F.2d 724, 730 n. 6 (9th Cir.1981); *United States v. Sand*, 541 F.2d 1370, 1376 (9th Cir.1976), *cert. denied*, *Scully v. United States*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 553 (1987). The mere fact that the Fourth Amendment illegality directed attention to Johns does not in and of itself require exclusion of the evidence later unearthed. *Hoonsilapa v. INS*, 575 F.2d 735, 738 (9th Cir.), *modified*, 586 F.2d 755 (1978).

As Judge Friendly has stated, "to grant life-long immunity from investigation and prosecution because a violation of the Fourth Amendment first indicated to the police that a man was not the law-abiding citizen he purported to be would stretch the exclusionary rule beyond tolerable bounds." *Sand*, 541 F.2d at 1376 (quoting *United States v. Friedland*, 441 F.2d 855, 861 (2d Cir.), *cert. denied*, 404 U.S. 867, 92 S.Ct. 143, 30 L.Ed.2d 111, 404 U.S. 914, 92 S.Ct. 239, 30 L.Ed.2d 188 (1971). Considering the previous information known to police about Johns and the suspected level of illegal activity on August 4, 1981, the simple illegal identification is insufficient to suppress the seized marijuana.

Accordingly, I would affirm Johns' conviction.