**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rene DEL TORO GUDINO, aka Rene Del Toro–Gudino, Defendant–Appellant.**

**No. 03–30023.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 2003.

Filed July 22, 2004.

Anthony R. Gallagher, Federal Defender, Great Falls, MT, for the appellant.

Carl E. Rostad (argued), Assistant U.S. Attorney, and David G. Dennis (briefed), Assistant U.S. Attorney, Great Falls, MT, for the appellee.

Before KLEINFELD, GOULD, and TALLMAN, Circuit Judges.

KLEINFELD, Circuit Judge.

The issue in this case is whether a criminal defendant's identity must be suppressed when it was disclosed as a result of an unconstitutional stop.

Rene del Toro Gudino was convicted of being found in the United States, having been deported.[1]  Del Toro Gudino appeals on the ground that the evidence of his identity should have been suppressed, because it was disclosed only when a deputy sheriff unconstitutionally directed his attention to del Toro Gudino.  The district

---

1.  8 U.S.C. § 1326(a).

court denied the motion to suppress without an evidentiary hearing, so the only facts we have on the "stop" are those in the report from the sheriff's office that defense counsel attached to his motion. We put "stop" in quotation marks because the deputy did not stop del Toro. He was already stopped when the deputies directed their attention to him.

Between two and three in the morning, a deputy sheriff on routine patrol in Havre, Montana, drove behind a convenience store and "noticed two Hispanic transient looking males sitting on the sidewalk." He got out of his car and sought their identities. They had no driver's licenses or other identification, spoke poor English, and seemed evasive. The deputy thought they might be illegal aliens and called his dispatcher to bring in the Border Patrol. While he was waiting for the Border Patrol agents, the deputy learned, apparently from the dispatcher, that del Toro Gudino's companion had an outstanding warrant for his arrest, so he put them in separate vehicles. Del Toro Gudino was handcuffed in the back seat.

Del Toro Gudino told the deputy sheriff and the border patrol agent that he was Martel Garcia–Barrajas, born in Mexico but a United States citizen. The agent ran the name through the federal database and, finding no such person with the date of birth del Toro Gudino had given, the agent detained him. The next morning, confronted with the absence of any record of his naturalization, del Toro Gudino admitted that he was actually an alien in the country illegally. Despite his admission of illegal alienage, del Toro Gudino did not admit who he really was (which could be explained by the fact that an illegal alien,

with nothing more against him, is often taken to the border and released). The Border Patrol discovered the true of identity of "Garcia–Barrajas" when his fingerprints and picture matched a deported alien named Rene del Toro Gudino, who had an extensive criminal and immigration history including a prior deportation. After obtaining del Toro Gudino's file and ascertaining that he had no permission from the Attorney General to return, del Toro Gudino was indicted for being in the United States in violation of § 1326(a).

Del Toro Gudino moved to suppress the statements he made about his identity (that he was an American citizen named Martel Garcia–Barrajas) and the subsequent discovery of his true identity, on the ground that he had been arrested without probable cause or even the reasonable suspicion required for a *Terry*[2] stop. Conceding that ordinarily when an illegal arrest leads only to disclosure of identity the identity cannot be suppressed,[3] counsel for del Toro Gudino argued that this particular stop and arrest were founded solely on del Toro Gudino's "Hispanic appearance," and thus constituted an "egregious" violation of the Fourth Amendment to which the non-suppression-of-identity rule ("identity rule") did not apply. The district court denied the motion without an evidentiary hearing on the ground that identity cannot be suppressed, regardless of the unconstitutionality of the stop or arrest that led to the disclosure of identity. Del Toro Gudino was convicted in a bench trial and sentenced. He appeals the denial of his motion to suppress.

## Analysis

We review de novo.[4]

2. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

3. *See United States v. Guzman–Bruno*, 27 F.3d 420, 421 (9th Cir.1994).

4. *United States v. Fernandez–Castillo*, 324 F.3d 1114, 1117 (9th Cir.2003).

The district court proceeded without an evidentiary hearing, making no findings of fact as to why the deputy sheriff stopped to talk to del Toro Gudino and his companion, and why he put them in patrol cars. The district court instead tersely denied the motion as a matter of law on the ground that the identity of a defendant is itself never suppressible as a fruit of an unlawful arrest. We must determine whether that proposition of law applies to a person who claims he was stopped merely because of ethnicity.[5]

In *Lopez–Mendoza v. INS*, an en banc panel of our court considered the consolidated cases of two illegal aliens who had been ordered deported.[6] In the first case, the INS did a workplace sweep for illegal Hispanic aliens, and obtained an admission from Lopez–Mendoza that he was an illegal alien. In the second case, the INS unlawfully detained Sandoval–Sanchez, who then admitted that he was an illegal alien. We vacated Lopez–Mendoza's deportation order and remanded for a determination whether his Fourth Amendment rights had been violated, and we reversed Sandoval–Sanchez's deportation order because of the Fourth Amendment violation, holding that the exclusionary rule applied in civil deportation hearings.[7]

The Supreme Court reversed our decision as to both aliens in *INS v. Lopez–Mendoza.*[8] It held that the exclusionary rule for Fourth Amendment violations did not apply to either alien in his civil deportation proceeding.[9] The Court said two things in *Lopez–Mendoza* that are relevant to this appeal. First, it held that the body or identity of a respondent in a criminal or civil proceeding is not suppressible. Lopez–Mendoza objected only to his having been brought before the INS, unlike Sandoval–Sanchez, who challenged the evidence of his admission of unlawful entry. The Court rejected Lopez–Mendoza's argument on the ground that "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."[10] It is this extraordinarily broad statement, using the rarely employed word

---

**5.** While we reach no ultimate conclusion, because of the absence of findings of fact, regarding the constitutionality of the official conduct in this case, we note that the premise of del Toro Gudino's motion to suppress, that the deputy stopped him solely because of his ethnicity, is not supported by the record. The police report suggests three reasons why the patrolling deputy sheriff stopped to talk to del Toro Gudino and his companion: (1) it was between two and three in the morning; (2) they were "transient-looking"; and (3) they were "Hispanic." Moreover, once the deputy talked with the pair, he discovered that (4) they were evasive; (5) their English was "broken"; and (6) they had no identification. Handcuffing the men and putting them in two separate vehicles resulted from (7) discovering that del Toro Gudino's companion was subject to an outstanding warrant for his arrest. Thus, far from being a case where an individual was "stopped for driving while Hispanic," this is a case where the aliens were questioned for multiple reasons, of which apparent ethnicity was one. In any event, even assuming there was an unconstitutional stop that amounted to an "egregious" violation of del Toro Gudino's Fourth Amendment rights, which we doubt, we conclude that his motion to suppress was correctly denied.

**6.** *Lopez–Mendoza v. INS*, 705 F.2d 1059 (9th Cir.1983) (en banc).

**7.** *Id.* at 1075.

**8.** *INS v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984).

**9.** *Id.* at 1051, 104 S.Ct. 3479.

**10.** *Id.* at 1039, 104 S.Ct. 3479.

"never," that underlies the district court decision in the case at bar.

Second, the *Lopez–Mendoza* Court held that the cases before it did not involve "egregious" violations of the respondents' rights. Del Toro Gudino's appeal is based on this statement in the last section of the Court's opinion:

> [W]e do not deal here with egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained. *Cf. Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). At issue here is the exclusion of credible evidence gathered in connection with peaceful arrests by INS officers.[11]

Del Toro Gudino argues that this latter statement qualifies the former holding regarding identity evidence, such that in cases of egregious violations, the identity of a criminal defendant *may* be suppressed. Thus, though not claiming any violence or lack of credibility of the evidence, or that the claimed constitutional violation in any way undermined the probative value of the evidence against him, del Toro Gudino argues that being detained because of his ethnic appearance was an "egregious" violation of his rights that is not covered by the identity rule laid out in the earlier part of the *Lopez–Mendoza* opinion.

His argument gets support from a line of Ninth Circuit cases subsequent to *Lopez–Mendoza.* In *Adamson v. CIR,* we applied the qualification of *Lopez–Mendoza* and held that an "egregious" Fourth Amendment violation warranted the application of the exclusionary rule in a civil tax proceeding.[12] Following *Adamson,* we applied this exception in the immigration context. We held, in *Gonzalez–Rivera v. INS,* that evidence obtained as the fruit of a vehicle stop based solely on Hispanic appearance was an "egregious violation," and evidence obtained on account of the stop was inadmissible in a civil deportation proceeding.[13] *Gonzalez–Rivera* is distinguishable from the case at bar, though, because in that case the evidence to be excluded was not the alien's identity, and here it is.

Our cases treat identity different from other kinds of evidence. Where mere identity is involved, the relevant circuit authority is *United States v. Guzman–Bruno.*[14] *Guzman–Bruno,* like the case at bar, was a criminal prosecution under 8 U.S.C. § 1326. Like the case at bar, the defendant in *Guzman–Bruno* argued that all evidence of his identity learned in connection with his illegal arrest should be suppressed. We disagreed, reasoning that prior Supreme Court and Ninth Circuit precedent "clearly foreclose[d] Guzman-Bruno's attempt to suppress the fact of his identity."[15] We have consistently followed *Guzman–Bruno*'s holding as to identity evidence in a line of cases under § 1326.[16]

---

11. *Id.* at 1050–51, 104 S.Ct. 3479.

12. *Adamson v. CIR,* 745 F.2d 541, 545–46 (9th Cir.1984).

13. *Gonzalez–Rivera v. INS,* 22 F.3d 1441, 1451 (9th Cir.1994).

14. *United States v. Guzman–Bruno,* 27 F.3d 420 (9th Cir.1994).

15. *Id.* at 422 (citing *Lopez–Mendoza,* 468 U.S. at 1039, 104 S.Ct. 3479; *Hoonsilapa v. INS,*

575 F.2d 735, 738 (9th Cir.1978), *modified by,* 586 F.2d 755 (9th Cir.1978); *United States v. Orozco–Rico,* 589 F.2d 433, 435 (9th Cir. 1978); *United States v. Foppe,* 993 F.2d 1444, 1449 (9th Cir.1993)).

16. *See United States v. Parga–Rosas,* 238 F.3d 1209, 1215 (9th Cir.2001); *United States v. Diaz–Juarez,* 299 F.3d 1138, 1143 (9th Cir. 2002) (Graber, J., concurring); *id.* at 1148 n. 11 (Ferguson, J., dissenting). *See also United States v. Ramirez–Garcia,* 269 F.3d 945, 947

But, as del Toro Gudino correctly points out, we have never addressed the question squarely before to us today: Does the egregiousness of the constitutional violation change the applicability of the identity rule?

Del Toro Gudino argues that the qualification in *Lopez–Mendoza* regarding egregious violations applies not only to the section of the Court's opinion dealing with evidence against Sandoval–Sanchez, but also to the holding of the Court regarding the suppression of identity. We note, as an initial matter, that we have some doubt as to whether the qualification applies to *Lopez–Mendoza*'s identity rule. First, the unequivocal language used by the Supreme Court indicates that it did not intend to so limit its holding regarding identity. It is hard to argue that "never" means "hardly ever." Second, the line of cases cited by the Court in support of its identity holding involved fact patterns that most likely would have constituted "egregious" violations of the defendants' rights. In *Frisbie v. Collins,* the Court held that "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction' " where the defendant had alleged that officers forcibly seized, handcuffed, blackjacked, and took him across state lines in violation of the Federal Kidnapping Act.[17] *Frisbie* followed *Ker v. Illinois,* where the Court held that a defendant must still stand trial even though he was "forcibly and with violence" arrested in Peru, placed on board a ship, kept a "close prisoner until the arrival of that vessel at Honolulu, where, after some detention, he was transferred, in the same forcible manner" to another ship to be brought to Illinois to be tried.[18] The Court's reliance on cases with facts of this egregious nature indicate that when it said the body or identity of a defendant is "never" suppressible, it meant "never."

Even if the qualification in *Lopez–Mendoza* as to "egregious" violations does apply to the identity rule, the Court did not address the question whether a defendant's identity obtained as a result of an egregious constitutional violation may be suppressed. We hold that it may not.

■ Identity evidence is inherently different from other kinds of evidence, under *Lopez–Mendoza* and under our cases. Five years before *Lopez–Mendoza,* we held in *United States v. Orozco–Rico,* a § 1326 case, that "there is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity and that merely leads to the official file or other independent evidence."[19] *Lopez–Mendoza* did not change that rule; it reinforced it. We continue to hold today that the simple fact of who a defendant is cannot be excluded, regardless of the nature of the violation leading to his identity. Other evidence, of course, may be suppressed consistent with *Gonzalez–Rivera* and our cases applying the exclusionary rule in the criminal context.

■ Although the rule that identity evidence is not suppressible is not limited to § 1326 cases, its practical force is particularly great in this context. If a defendant's identity may be suppressed, the moment the court lets him go, he is imme-

---

(9th Cir.2001) (holding, without citing to *Guzman–Bruno,* that defendant's identity and fact of his presence in the United States cannot be suppressed).

17. *Frisbie v. Collins,* 342 U.S. 519, 522, 72 S.Ct. 509, 96 L.Ed. 541 (1952).

18. *Ker v. Illinois,* 119 U.S. 436, 438, 444, 7 S.Ct. 225, 30 L.Ed. 421 (1886).

19. *United States v. Orozco–Rico,* 589 F.2d 433, 435 (9th Cir.1978).

diately committing the continuing violation of being present in the United States after having been deported. This is the problem the Court found compelling in *Lopez–Mendoza*, when it noted that "[t]he constable's blunder may allow the criminal to go free, but we have never suggested that it allows the criminal to continue in the commission of an ongoing crime."[20]

### Conclusion

For the reasons articulated above, we hold that del Toro Gudino may not suppress the fact of his identity.

AFFIRMED.

---

**20.** *Lopez–Mendoza,* 468 U.S. at 1047, 104 S.Ct. 3479.