NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 23 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

R&SL, INC, DBA Total Employment and
Management (TEAM),

Petitioner,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,

Respondents.

No.   22-70026

DHS No.
OCAHO Case No. 19A00044

MEMORANDUM[*]

On Petition for Review of an Order of the
Department of Homeland Security

Submitted February 16, 2023[**]
San Francisco, California

Before:  WARDLAW, NGUYEN, and KOH, Circuit Judges.

R&SL, Inc., doing business as Total Employment and Management

("TEAM"), petitions for review of a decision by the Administrative Law Judge

("ALJ") imposing penalties totaling $1,527,308.90 for the untimely and improper

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

completion of employment eligibility verification forms of more than a thousand employees.  TEAM challenges the ALJ's finding that it did not demonstrate an inability to pay the penalties.  We have jurisdiction under 8 U.S.C. § 1324a(e)(8).  Reviewing the ALJ's factual determinations for substantial evidence, *see Frimmel Mgmt., LLC v. United States*, 897 F.3d 1045, 1050–51 (9th Cir. 2018), we deny the petition for review.

TEAM primarily contends that the ALJ arbitrarily and capriciously relied on gross receipts and gross profits rather than its preferred metric—cash flow.  The ALJ considered all of TEAM's evidence, including its limited cash flow and reliance on factoring, an expensive method of financing, to cover its payroll expenses.  The ALJ agreed with TEAM that "[c]ash flow is a relevant data-point" but found that it was not dispositive to the analysis because "cash flow can look different at different times of year" for companies like TEAM with cyclical earnings.  The ALJ thus considered additional metrics, including the upward "trend" in gross profits and receipts as well as TEAM's business expansion.  Substantial evidence supports these findings.

TEAM's expert, CPA Andrew Manning, testified that it would be "very difficult" for TEAM to pay a penalty of any amount.  Manning explained that at the end of March 2021, TEAM's short term financial obligations exceeded the amount of cash it had on hand and could be expected to generate by factoring its

2

existing invoices. Manning also relied on evidence showing that TEAM had negative cash flow from its operating activities during various intervals over the preceding 30 months—with a focus on the first six months of TEAM's fiscal year.[1]

However, TEAM's co-owner, Randy Lustig, testified that TEAM's business is cyclical—demand peaks in September and October and is at its lowest in mid-November through January. For example, TEAM's revenues in the last five months of fiscal year 2019 (May through September 2019) were more than double its revenues during the first seven months (October 2018 through April 2019). Given this cyclicality, the ALJ reasonably considered annual metrics in addition to TEAM's stock of available cash at a low point in the fiscal year.

Nor was it arbitrary and capricious for the ALJ to focus on gross profits and receipts rather than some other annual measure of TEAM's financial health. Contrary to TEAM's assertion, gross profits includes both "cash coming in and . . . cash going out." Gross profits account for operating expenses, including labor expenses, but not "overhead and things like that," such as administrative costs and legal expenses. Due to the investigation of TEAM's employment eligibility verifications, TEAM's legal expenses had ballooned in recent years—from

---

[1] Manning discussed TEAM's cash flow on an annual basis for fiscal years 2019 and 2020. While in both years TEAM experienced negative cash flow from its operations, its overall cash flow—which also included cash flow from its investing and financing activities—was positive.

between $3,000 and $40,000 per year to more than $230,000 during the first six months of fiscal year 2021. TEAM's accountant testified that she expected these costs to "decline significantly" when the instant litigation ends. Because the litigation-related legal costs would not recur and skewed TEAM's net profits, the ALJ reasonably considered TEAM's gross profits, which excluded such costs. And the ALJ did not assess the penalties based on TEAM's gross profits or receipts in a particular year, but rather considered the upward *trend* in both indicators. This, too, was reasonable.

TEAM also contends that the ALJ "mischaracteriz[ed] the evidence related to TEAM's decision to open new offices" as a business "expansion" rather than "a less expensive way of managing existing accounts." But the ALJ acknowledged that TEAM "financed [the] two new locations by using assets it already owned" and that "profits generated by these locations only sustain operations at the locations." And the ALJ did not mischaracterize the record. Lustig agreed that TEAM "expanded to two additional locations" and testified that the goal was to "expand and generate more cash, which gives us cash flow."

**PETITION DENIED.**

4